Plaintiff-appellant the State of Ohio appeals from a suppression order. The State contends that the trial court erred in finding that the evidence was obtained as the result of an unlawful stop. We agree. Consequently, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I
The facts are succinctly set forth in the trial court's decision, as follows:
 This matter is before the Court on Defendant's Motion to Suppress tangible evidence and statements allegedly obtained from Defendant. On January 26, 1996, at approximately 11:40 P.M., officers driving down Dorham Place observed five men, who appeared to be talking, congregated near a silver Honda. Police allege that when the men noticed the police cruiser, four of them left scattering in four different directions. Police further state that Defendant remained near the car, watching officers as he pulled something from his coat, placing it behind the passenger seat before closing the car door.
 Officers stopped Defendant and frisked him. It is further alleged that because police believed Defendant may have been trying to retrieve a weapon from his pocket, an officer pulled Defendant's hand from his coat pocket, revealing a plastic baggie containing crack cocaine.
 Initially, the Court finds that based on police testimony, Defendant was seized when his freedom of movement was curtailed by the officers' show of authority. In fact, it was indicated that the officers would probably have chased him had he run after being approached.
* * *
 The officer testified that he did not know what object the Defendant was placing into the vehicle. Furthermore, he did not testify to seeing drugs, baggies, a weapon or anything else change hands. His conclusion that Defendant was armed and dangerous appears to be rooted in his knowledge of the reputation of the area. Additionally, there was no testimony indicating that an informer stated a drug sale was about to take place or that the individuals had been involved in open air drug sales.
 Under the totality of the circumstances, Defendant's placing of an unknown object into the vehicle was not sufficient evidence to warrant an inference as to the concealment of weapons or contraband. This action, considered in conjunction with the officers' other stated justifications for Defendant's seizure, is subject to an innocent interpretation. Therefore, the Court finds that the officer searched Defendant upon his mere suspicion, which as in Ramey, [(Ohio Com. P., 1971), 30 Ohio Misc. 889,] "was not only less than probable cause but also less than the limited circumstances allowed for a `less than probable cause' searching the Terry case." Ramey, supra.
 The search in the instant case began before Defendant reached into his pocket and before his hand was removed allegedly revealing drugs. Therefore, because the search was unjustified based "upon the facts and circumstances within the officer's knowledge at the time of the search — not the circumstances which arose after the search began," the search "cannot be justified by after the fact circumstances or factors." Id.
Based upon its conclusion that the evidence was obtained as a result of an unlawful search and seizure, the trial court suppressed the evidence. From the suppression order, the State appeals.
 II
The State's sole Assignment of Error is as follows:
 TRIAL COURT ERRED IN FINDING THAT POLICE OFFICERS SEARCHED APPELLEE UPON MERE SUSPICION.
The only witness at the suppression hearing was one of the arresting officers, Kenneth Daly. From the trial court's decision, it is clear that the trial court credited Daly's testimony, but found that his testimony failed to establish a justification for the search and seizure.
As noted in the trial court's decision, Daly testified that he had had occasion to make numerous drug arrests at the location where he encountered Beasley. Daly also testified that on several of those occasions, firearms were recovered.
Although Daly characterized his initial contact with Beasley as being merely a "field interview," we agree with the trial court's characterization of this encounter as an investigatory stop, requiring a reasonable and articulable suspicion. Before the stop was effected, Daly observed four of the five individuals leave in different directions, after stopping the police cruiser, and then saw Beasley pull something out of his coat and put it behind the seat of the car, while keeping the police cruiser in view. The trial court, finding that Beasley's act of putting something behind the seat was subject to an innocent interpretation, concluded that Daly had only "mere suspicion" that the object removed from Beasley's coat was a weapon or other contraband.
In our view, the circumstances observed by Daly compare favorably with the circumstances observed by the police officer inState v. Bobo (1988), 37 Ohio St.3d 177, in which a mere bobbing motion of the head was deemed to be sufficient, in combination with the notorious character of the area and the time of day, to trigger a reasonable, articulable suspicion of criminal activity. In the case before us, the time was approximately 11:40 p.m. It was also mid-winter — January 26, 1996. In our view, the totality of the circumstances justified a brief, investigative stop.
Furthermore, based upon the propensity of drug dealers to carry firearms, which was noted in Daly's testimony with reference to this particular location, the weapons frisk was reasonable. In the course of this frisk, Beasley "immediately reached his right hand up into his breast pocket of his jacket," with the resulted that Daly, fearing that Beasley might be trying to retrieve a weapon out of that pocket, grabbed his wrist. Daly then asked Beasley several times to remove his hand from the pocket. The testimony at this point is worth reciting verbatim:
 A. He reached up in the pocket. And I thought he was trying to retrieve a weapon out of that pocket. After I had that secured, I told him to remove his hand from his pocket. It was physically clinched on something in the pocket.
Q. How could you tell that?
 A. Just, it was his wrist was tight and muscles were taut and his hand was balled up in the pocket.
 I asked him several times to remove the hand from the pocket. He refused. I ended up pulling the hand out of his pocket physically. As the hand cleared the pocket, I secured the hand in case there was a weapon sticking out of the hand.
Q. Did you observe anything at that time?
A. Yes, I did.
Q. What did you observe?
 A. As the hand cleared the pocket, there was a plastic baggie hanging out of Mr. Beasley's hand from the bottom and there were two pieces of, of what appeared to be crack cocaine.
We conclude that it was reasonable, under the circumstances, to frisk Beasley for weapons. Once Beasley, during the frisk, reached into a pocket, it was certainly reasonable to immobilize his hand, after Beasley refused to withdraw his hand from his pocket voluntarily, and to pull his hand out of his pocket. The result of this was to bring into plain view a plastic baggie containing what appeared to an experienced police officer to be crack cocaine.
We conclude that the evidence obtained was not the result of an unlawful search and seizure. The State's sole Assignment of Error is sustained.
 III
The State's sole Assignment of Error having been sustained, the judgment of the trial court is Reversed, and this cause isRemanded for further proceedings consistent with this opinion.
YOUNG, P.J., and WOLFF, J., concur.
Copies mailed to:
Carley J. Ingram
Suzanne M. Lough Wynn
Hon. Mary Donovan